# TED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **MARTIN RENEE WILLIAMS** | **CASE NO. 6:16-CV-00216** |
| **VERSUS** | **MAGISTRATE JUDGE HANNA** |
| **SHERIFFS OFFICE VERMILION PARISH ET AL** | **BY CONSENT OF THE PARTIES** |

## MEMORANDUM ORDER

Currently pending is a Motion in Limine [Rec. Doc. 54], filed by Defendant Michael Couvillion, Vermilion Parish Sheriff, by which the sheriff seeks to exclude testimony or evidence regarding treatment of other deputies that were not similarly situated to the plaintiff. The sheriff distinguishes the plaintiff from the named officers in two ways: (1) at the time she was terminated, the plaintiff was a sergeant, in charge of her shift, working the jail, while the named officers were all either patrol officers and/or were not shift sergeants; and (2) the plaintiff was allegedly terminated for conduct constituting intentional dishonesty, *i.e.* cheating on a firearms examination and submitting false scores for POST qualification and supplemental pay, while none of the named officers committed similar department rules violations. The plaintiff opposes the motion [Rec. Doc. 57], as discussed herein. For the reasons explained below, the sheriff's motion [Rec. Doc. 54] is GRANTED.

The sheriff does not challenge particular officer-comparators by name; rather, he argues that no comparator is similarly situated, via a pinpoint citation to the plaintiff's deposition testimony identifying certain officers, and argues that the circumstances of each of those officer's violations were "in no way similar to cheating on an exam."[1] In her response, the plaintiff broadens the base of comparison to include three categories of comparators: those who were allowed to work light duty shifts at the front desk rather than the booking room; the deputy with whom the plaintiff was required to compete for a sergeant position; and those who were subjected to less severe disciplinary action than termination. In general, the plaintiff argues that each of the named officer-comparators were "(1) [e]mployees of the Defendant, (2) [e]mployed at the jail, and were either (3) Deputies, Sergeants, or Lieutenants of the Defendant."[2] Although the plaintiff concedes that she "was a deputy officer and a sergeant . . . [and] not named a lieutenant," she states-without support-that "the employment duties of a sergeant of the Defendant and a lieutenant of the Defendant are nearly identical."[3] The plaintiff then concludes that "each deputy specifically named herein either held the same job title as [the plaintiff] or

---

[1] Rec. Doc. 54-1, p. 2 (citing Rec. Doc. 44-3, p. 14). The cited pages reference the plaintiff's deposition testimony naming Deputy William Thibodeaux, Deputy Jeremiah Suarez, Lieutenant Raymond Thibodeaux, Deputy Chad Leblanc, Deputy Horace Richard, and Deputy Jessica Romero. Therein, the plaintiff explains that she knows of each of these officer's circumstances based solely on personal conversations with the officers.
[2] Rec. Doc. 57, p. 3.
[3] *Id*.

performed substantially similar tasks," and as a result, each employee who was treated more favorably was similarly situated to the plaintiff.⁴

At the outset, the Court notes that the plaintiff's principal complaint, as indicated by her EEOC charge and amended pleadings herein, is that she was wrongfully terminated based on discrimination. She expands upon that claim by alleging that she was also discriminated against when she was not allowed to work light duty in the front office, as opposed to the booking room, as well as being forced to compete with a white female officer when applying for a sergeant position. For the following reasons, the Court finds that the plaintiff's allegations regarding her placement while on light duty are not actionable adverse employment actions, and even if they were, the named officers are not similarly situated, such that her alleged "comparators" with respect thereto are not relevant to this discrimination action. As to the other two categories, although the plaintiff may establish adverse employment actions, the named officers are not similarly situated.

With respect to discrimination claims, the Fifth Circuit holds that adverse employment actions include only ultimate employment decisions, such as hiring, firing, demoting, promoting, granting leave, and compensating.⁵ "[A]n employment

---

⁴ *Id.*
⁵ *Thompson v. City of Waco*, 764 F.3d 500, 503–04 (5th Cir. 2014); *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 456 n. 2 (5th Cir. 2011) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)).

action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action."[6] "[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same."[7] For example, in the Fifth Circuit, neither a change in work schedule nor the mere "loss of some job responsibilities" constitutes an adverse employment action.[8] "'Although actions short of termination may constitute an adverse employment action within the meaning of the statute, not everything that makes an employee unhappy is an actionable adverse action.'"[9] Here, the plaintiff fails to allege any facts which might support a finding that her placement in the booking room, rather than the front desk, with no other alleged changes to the circumstances of her light duty, constituted an adverse employment action. Even if this constituted an adverse employment action, she has failed to show that the named comparators were similarly situated, as will be explained below.

The Fifth Circuit has developed certain parameters in considering the requirement that one employee be similarly situated to another. "Employees with

---

[6] *Thompson*, 764 F.3d at 503 (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003))).
[7] *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999).
[8] *Thompson*, 764 F.3d at 503-04; *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n. 2 (5th Cir. 2003) (citing *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 521 (5th Cir. 2001) for the proposition that the "loss of some job duties" is not an ultimate employment decision); *Watts*, 170 F.3d at 511–12 (change in work schedule and request that an employee perform two additional tasks did not rise to the level of an adverse employment action).
[9] *Greaser v. Mo. Dep't of Corr.*, 145 F.3d 979, 984 (8th Cir. 1998), *cert. denied*, 525 U.S. 1056 (1998) (quoting *Manning v. Metro. Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir. 1997)); *accord Garrison v. Gambro, Inc.*, 428 F.3d 933, 939 (10th Cir. 2005).

different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."[10] "Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated."[11] The plaintiff must "demonstrate that the employment actions at issue were taken 'under nearly identical circumstances[,]'" meaning "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[12]

To this end, it is the plaintiff's burden to show "that the misconduct for which she was discharged was nearly identical to that engaged in by a [white] male employee whom [the employer] retained."[13] "[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of

---

[10] *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000)).
[11] *Lee*, 574 F.3d at 259-60 (citing *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)).
[12] *Lee*, 574 F.3d at 260 (quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) (internal quotation marks omitted), and citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221-22 (5th Cir.2001); *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir.1985); and *Okoye v. Univ. of Tex. Houston Health Sci.*, 245 F.3d 507, 514 (5th Cir. 2001)).
[13] *Smith*, 891 F.2d at 1180 (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. Unit B 1982)).

the proffered comparator who allegedly drew dissimilar employment decisions."[14] "If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis."[15] While each employee's track record "need not comprise the identical number of identical infractions," to be an appropriate comparator, the record "must be comparable" to that of the plaintiff.[16]

In the instant motion, the sheriff argues that the plaintiff has failed to demonstrate that the named comparators are similarly situated, in large part, because there are no allegations that any of the comparators committed violations similar to that for which plaintiff was allegedly terminated. Additionally, the sheriff argues that none of the comparators is a shift sergeant at the jail, as was the plaintiff. Focusing on misconduct, the plaintiff was allegedly terminated for cheating on a firearms examination and submitting false scores for POST qualification and resultant supplemental pay.[17] In response, the plaintiff offers the following particulars as to each comparator, insofar as those that fall under the plaintiff's category of officers disciplined without being terminated:

---

[14] *Lee*, 574 F.3d at 260 (collecting cases).
[15] *Id.* (quoting *Wallace*, 271 F.3d at 221 (emphasis supplied in *Lee*)).
[16] *Lee,* 574 F.3d at 260.
[17] *See* Rec. Doc. 54-1, p. 2 ("Although Plaintiff claims that she did not *knowingly* cheat on the exam, that does not change the fact that she was terminated for conduct constituting intentional dishonesty.").

- Jeremiah Suarez, white male deputy, written up for falsely arresting an individual and was demoted;[18]

- Raymond Thibodeaux, white male lieutenant, written up for falsely arresting an individual and was suspended;[19]

- William Thibodeaux, white male deputy, discharged his firearm on the floor of the restroom and was suspended;[20]

- Chad Leblanc, white male deputy, punched a maintenance man and was suspended.[21]

Although the plaintiff generally argues that she was aware of each of these officer's infractions because "the officers were on her shift," a review of her deposition testimony indicates that she only testified to that basis of knowledge as to William Thibodeaux and Horace Richard,[22] the latter of which is not mentioned in her response to the instant motion.

The plaintiff also acknowledges that, prior to being terminated, she was "written up for very minor offenses."[23] In her deposition, the plaintiff further

---

[18] Rec. Doc. 57, p. 2 (citing Rec. Doc. 44-3, p. 14). In the plaintiff's words, her understanding of this incident involved Suarez and Thibodeaux reading "the NCIC report incorrectly." Rec. Doc. 44-3, p. 14. Consistent therewith, the sheriff submits that Suarez and Thibodeaux "accidentally arrested someone because they did not understand that the 'felon with a firearm' statute had a temporal limit[.]" Rec. Doc. 54-1, p. 2. These infractions a clearly distinguishable.
[19] *Id*. As noted above, Suarez and Thibodeaux's violations arose out of the same false arrest. Although the plaintiff states that Thibodeaux was also "only demoted," the plaintiff's cited deposition testimony indicates that Suarez was demoted, while Thibodeaux was suspended. Rec. Doc. 44-3, p. 14.
[20] Rec. Doc. 57, p. 2 (citing Rec. Doc. 44-3, p. 15). While the plaintiff offers no other facts underlying this infraction, the sheriff submits that this officer "accidentally discharged" his weapon. Rec. Doc. 54-1, p. 2.
[21] Rec. Doc. 57, p. 2 (citing Rec. Doc. 44-3, p. 16).
[22] *See* Rec. Doc. 44-3, pp. 15 and 24.
[23] Rec. Doc. 57, p. 2 (citing Rec. Doc. 44-3, pp. 12-13).

confirmed that, prior to being terminated, each time she was "written up" and appealed the intended punishment, her punishment was later amended to be less severe.[24] Nevertheless, she testified that the other officers "didn't get written up for the things that [she] was written up for."[25] She also admitted that she was unaware of the contents of each of these officer's disciplinary files and that her knowledge of their individual infractions was based on "personal conversations with these officers."[26]

As a threshold matter, aside from conclusorily asserting that each of the named officer-comparators were Vermilion Parish Sheriff's employees, employed at the jail, and were either deputies, sergeants, or lieutenants, the plaintiff makes no effort to demonstrate that any of the named comparators were similarly situated under the above-cited Fifth Circuit jurisprudence. While the Fifth Circuit does not "interpret 'nearly identical' as synonymous with 'identical,'" it is clear that the plaintiff has not carried her burden of establishing that "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[27] As noted, the sheriff focuses on the latter, in that

---

[24] Rec. Doc. 44-3, pp. 12-13.
[25] *Id*. at p. 13.
[26] *Id*. at pp. 13, 14.
[27] *Lee*, 574 F.3d at 260 (quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) (internal quotation marks omitted), and citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212,

none of the alleged comparators have comparable violation histories. The Fifth Circuit has emphasized this requirement. "[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions."[28] There is no *admissible* evidence upon which the Court could find that any of the named comparators engaged in dishonesty at all, much less alleged dishonesty that would render them similarly situated with the plaintiff, given the alleged circumstances of her termination.[29] Accordingly, the motion is granted insofar as evidence of these comparators (Suarez, Thibodeaux, Thibodeaux, and Leblanc) is not relevant and excluded.

The plaintiff's next category includes a white female deputy, Jessica Lacoste, with whom the plaintiff alleges she was forced to compete when applying for a sergeant position. Citing to her deposition testimony, the plaintiff argues that the sheriff had never before made the sergeant position a competition and, further, that Lacoste was promoted to sergeant over the plaintiff, despite the plaintiff having more experience and being more qualified.[30] A review of the plaintiff's deposition

---

221-22 (5th Cir.2001); *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir.1985); and *Okoye v. Univ. of Tex. Houston Health Sci.*, 245 F.3d 507, 514 (5th Cir. 2001)).
[28] *Lee*, 574 F.3d at 260 (collecting cases).
[29] *See Lee*, 574 F.3d at 261 ("As the Supreme Court has instructed, the similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out . . .") (quoting *McDonald v. Santa Fe Trail*, 427 U.S. 273, 283 n. 11 (1976) (quoting *McDonnell Douglas*, 411 U.S. 792, 804 (1973)).
[30] Rec. Doc. 57, p. 2.

testimony reveals that, by the plaintiff's own admission, the plaintiff failed the 12-week "road academy" the first time, whereas Lacoste did not.[31] Furthermore, the plaintiff testified that, as part of the sergeant application process, she and Lacoste were asked to "do paperwork and they judged on who did the better paperwork."[32] The plaintiff concedes that the sheriff "said Jessica did [better paperwork,]" and therefore was promoted to sergeant.[33] The plaintiff further testifies that she was later forced to compete with a male, Jacob Fontenot, for the next available sergeant promotion, and the plaintiff received that promotion, in December 2008.[34] Accordingly, by the plaintiff's own admissions, she was not similarly situated to Lacoste; therefore, the motion is granted insofar as the plaintiff may not present evidence or testimony of Lacoste as a comparator.

Finally, even if the plaintiff's placement while on light duty could be considered an actionable adverse employment action, the plaintiff has also failed to establish that those officers are similarly situated to her. In her response to the instant motion, the plaintiff alleges only that she was placed on light duty in the booking room after experiencing a work-related knee injury.[35] Her knee injury occurred in October 2013.[36] In her complaint and amended complaint, she further alleges that

---

[31] Rec. Doc. 44-3, p. 10.
[32] *Id.* at p. 11.
[33] *Id.*
[34] Rec. Doc. 44-3, p. 11; Rec. Doc. 57, p. 1.
[35] Rec. Doc. 57, p. 1.
[36] Rec. Docs. 1, p. 3; 8, p. 2; and 10, p. 3.

she was denied light duty in the front office after a pregnancy-related hernia repair in October 2011.[37] Without distinguishing between the 2011 and 2013 allegations, the plaintiff argues that she requested that she be allowed to work in the front office, because the inmates' ability to roam "more freely in the booking room versus the front office made her uneasy;" however, she "was not given an option to move to the front desk in the same manner as other similarly situated employees."[38] As comparators, the plaintiff offers Kelly Gonzalez, a white female sergeant, and Bennett Lemaire, a white male sergeant, and states that she observed both of these officers being allowed to work at the front desk on light duty.[39] She further asserts that, during her tenure, "she had not seen anyone [other than herself] employed by the Vermilion Parish Sheriff's Office have light duty in the booking room."[40]

Again, these anecdotal observations are unsupported with any facts which might allow the Court to find that these officers' circumstances were "nearly identical." A review of her deposition testimony does not offer any more support for the relative circumstances of these officers, and in fact, cuts against a finding that

---

[37] Rec. Doc. 1, p. 3; Rec. Doc. 10, p. 3. In her amended complaint, the plaintiff further stated that Deputy Peter Dozier "was denied light duty as well in the front office after having open heart surgery." Rec. Doc. 10, p. 3. Thus, in addition to not constituting an adverse employment action, the plaintiff has admitted that at least one other deputy was treated similarly to the plaintiff insofar as a male was denied light duty in the front office while recovering from a medical procedure.
[38] Rec. Doc. 57, p. 1.
[39] Rec. Doc. 57, p. 2.
[40] Rec. Doc. 57, p. 2.

they were similarly situated, under the Fifth Circuit jurisprudence cited herein. The plaintiff testified that "the other officers that were either hurt that was from patrol, corrections, or any other division, were allowed to go in the front office or in the control room."[41] She then specifically names the two officers cited in her response to the instant motion, and states generally that she observed them on light duty in the front office after 2009 or 2010.[42] Not only do these generalizations fail to establish nearly identical circumstances, but the plaintiff's catchall references to officers from various divisions cannot support a finding that they were similarly situated. As noted, "[e]mployees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."[43] Accordingly, even if light duty in the booking room constituted an adverse employment action, these officers were not similarly situated, and the motion is granted insofar as the plaintiff may not offer testimony or evidence of these officers as comparators.

---

[41] Rec. Doc. 44-3, p. 9.
[42] *Id.*
[43] *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000)).

For the foregoing reasons, the sheriff's motion [Rec. Doc. 54] is GRANTED. The plaintiff may move for reconsideration of any alleged comparator should she be able to demonstrate that any officer is similarly situated, as discussed herein.

Signed in Lafayette, Louisiana, this 7th day of September, 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE